Kelsey Harclerode (SBN 313976)
kelsey@zwillgen.com
Dana Brusca (*pro hac vice*)
dana@zwillgen.com
**ZWILLGEN PLLC**
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

Sheri Pan (SBN 316136)
sheri@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335

Attorneys for Defendant
**YANKA INDUSTRIES, INC. d/b/a**
**MASTERCLASS**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN SILVA and ELIZABETH MALATY-UHR, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>YANKA INDUSTRIES, INC. d/b/a MASTERCLASS<br><br>*Defendant.* | Case No. 3:24-cv-05264-JD<br><br>**DEFENDANT YANKA INDUSTRIES, INC. d/b/a MASTERCLASS'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:      Hon. James Donato<br>Hearing Date: January 23, 2025<br>Time:      10:00 a.m.<br>Courtroom:  11, 19th Floor |

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 23, 2025, or as soon thereafter as this matter may be heard, before the Honorable James Donato in Courtroom 11 of this Court, located on the 19th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Yanka Industries, Inc. d/b/a MasterClass ("Defendant" or "MasterClass") will, and hereby does move the Court for an order granting its Motion to Dismiss the Second Amended Complaint. This Motion is based on Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' allegations fail to state any valid claim. This Motion will be based upon this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of Sheri Pan; the complete record in this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.


Dated: November 14, 2024            **ZWILLGEN LAW LLP**

                                    By:   _/s/ Sheri Pan_
                                        Sheri Pan
                                        sheri@zwillgen.com

                                    **Attorney for Defendant**
                                    Yanka Industries, Inc. d/b/a MasterClass

## I.    INTRODUCTION

In recent years, litigation around the use of the "Meta Pixel" on various websites has revived litigation under the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"). The Meta Pixel is a piece of technology embedded on host websites that interacts with Facebook cookies installed on a Facebook user's browser. If users remain logged into Facebook when they visit a webpage that features a Meta Pixel, specific information about that visit may be shared with Meta, such as the user's Facebook ID and information about which webpages on the site they visited. While some district courts overseeing these lawsuits have recognized that certain limited applications of a Meta Pixel can support a VPPA claim at the pleading stage, none of these cases have released Plaintiffs of their obligation to sufficiently plead the essential elements of the law. Relevant here, that includes the VPPA's basic requirements that an alleged transmission of "personally identifiable information" ("PII") be both (i) personally identifying and (ii) evidence the "specific video materials or services" requested or obtained by an individual. 18 U.S.C. § 2710(a)(3).

In this case, Plaintiffs Alan Silva and Elizabeth Malaty-Uhr posit two alleged disclosures made by Defendant Yanka Industries, Inc. d/b/a MasterClass's ("MasterClass") website: one involves the Meta Pixel, and another concerns use of Google Analytics, a similar piece of technology that allegedly sends information to Google. Neither disclosure alleges the transmission of statutory PII.

For the Google disclosures, Plaintiffs allege that MasterClass disclosed their IP addresses to Google, which they contend Google could combine with its own data to personally identify them. This theory of liability was explicitly addressed and rejected by the Ninth Circuit in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). There, the Ninth Circuit held that, under the VPPA, information is only personally identifying if an ordinary person—not one of the world's largest data aggregators—can connect the disclosed information with an individual. Because the Second Amended Complaint overtly alleges the Google disclosures do not meet the Ninth Circuit's standard, those disclosures cannot ground a viable VPPA claim as a matter of law.

For the Facebook disclosures, Plaintiffs allege that MasterClass disclosed their Facebook IDs and the fact that Plaintiffs purchased MasterClass subscriptions to Facebook. This theory also goes nowhere. First, it does not posit the disclosure of any "specific video materials or services" that either

Plaintiff requested or obtained and, thus, does not allege the disclosure of statutory PII. Second, because Plaintiffs do not allege that their Facebook or Meta profiles included any identifying information about them, they do not plausibly allege that the transmission of their Facebook IDs resulted in the disclosure of personally identifying information under *Eichenberger*'s ordinary person standard.

Plaintiffs have already filed three complaints against MasterClass, but have not – and cannot – articulate an actionable theory of VPPA liability. The Second Amended Complaint (dkt. 17 ("SAC")) should be dismissed with prejudice.

## II.    FACTUAL ALLEGATIONS

### A.    MasterClass's Website

MasterClass operates the website www.masterclass.com, which features instructional and educational videos. (SAC ¶ 24.) MasterClass offers paid subscriptions to its website. (*Id.* ¶ 59.) Its subscription webpage requires that users supply various contact and payment information. (*Id.*) The SAC does not allege that the subscription webpage itself contains any video content. Other portions of MasterClass's website—which are only accessible to registered subscribers—allow users to "request and obtain pre-recorded videos." (*Id.* ¶¶ 11, 18.)

The SAC alleges that the MasterClass website includes the Meta Pixel and Google technology on different pages of its website: the Meta Pixel is present on MasterClass's subscription webpage (where people sign up for a MasterClass subscription) and Google technology is present on MasterClass's webpages featuring video content. (*Id.* ¶¶ 60, 2.)

### B.    The Meta Pixel

Plaintiffs allege that MasterClass's subscription webpage includes a "Meta" or "Facebook Pixel." (*Id.* ¶ 60.) When installed on a webpage, the Meta Pixel "allow[s companies] to track consumers' actions and report the actions back to Meta." (*Id.* ¶ 54.) The SAC references and incorporates documentation from Meta, (*id.* ¶ 56 n.21), which explains that the Meta Pixel "relies on Facebook cookies, which enable [Meta] to match your website visitors to their respective Facebook

DEFENDANT'S MOTION TO DISMISS; CASE NO. 3:24-cv-05264-JD

1    User accounts." (Decl. of Sheri Pan ("Pan Decl.") Ex. A at 1.[1]) The Pixel thereafter tracks certain

2    activity on a webpage; by default, this tracking is limited to "URLs visited, domains visited, and the

3    devices your visitors use." (*Id.*) The SAC alleges that the Pixel and Facebook's cookies can transmit

4    visitors' Facebook IDs to Meta, which are "unique and persistent identifier[s]" that are linked to

5    specific Meta profiles. (SAC ¶ 56.) Plaintiffs contend that "any ordinary person" can find the specific

6    Meta profile associated with a given Facebook ID "by simply accessing the URL

7    www.facebook.com/[unencrypted FID]." (*Id.* ¶ 62.) If that Meta profile also includes identifying

8    information about an individual – as Mark Zuckerberg's profile apparently does – Plaintiffs allege an

9    "ordinary person" can figure out who it belongs to. (*See id.* ¶¶ 56, 62.)

10       As installed on the MasterClass website's subscription webpage, the SAC alleges that the

11   Meta Pixel was configured to transmit (i) the fact that users purchased a subscription to MasterClass

12   and (ii) users' Facebook IDs to Meta. (*Id.* ¶ 3.) In their original complaint, Plaintiffs alleged that the

13   Meta Pixel on the MasterClass website was also programmed to disclose the specific video materials

14   that MasterClass users accessed on the website. (*See, e.g.*, dkt. 1 ¶ 3 ("The information Defendant

15   disclosed (and continues to disclose) to Meta, via the Meta Pixel it installed on its website, includes

16   the subscriber's Facebook ID . . . coupled with the title of each of the specific videos that the

17   subscriber requested on Defendant's website.").) But after counsel for MasterClass pointed out that

18   these allegations were not true – and, in fact, that MasterClass had carefully programmed the Meta

19   Pixel to *not* disclose any video viewing information of its users to third parties[2] – Plaintiffs amended

20   and pivoted to the "fact of subscription" theory now alleged in the SAC. Still, the SAC includes a few

21   _____

22   [1]     The Court can consider the Meta documentation because the SAC links to and relies on it. *See*
     *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted) (discussing incorporation by
23   reference doctrine). The Court can also take judicial notice of the document given that it is saved on
     and accessible via the Internet Archive's Wayback Machine. *See EVO Brands, LLC v. Al Khalifa*
24   *Grp. LLC*, 657 F. Supp. 3d 1312, 1322 (C.D. Cal. 2023) ("Courts have taken judicial notice of
     internet archives in the past, including Archive.org's 'Wayback Machine,' finding that Archive.org
25   possesses sufficient indicia of accuracy that it can be used to readily determine the various historical
     versions of a website.") (collecting cases).
26

27   [2]     Any attorney could confirm – and *should have* confirmed before filing a lawsuit – this for him
     or herself. Doing so can be accomplished using free browser extensions, including ones provided by
28   Meta itself.

3

1  stray remarks referencing this now-abandoned theory, even though there are no longer facts alleged

2  in support of it. (*See*, *e.g.*, SAC ¶ 58 (alleging as "relevant here" the notion that the Meta Pixel can be

3  configured to disclose "the specific video content [users] requested or obtained on [a] website").)

4  **C.    Google Analytics**

5  Plaintiffs allege that MasterClass's website uses "Google technology" or "Google Analytics"

6  or the "Google Tag Manager." (SAC ¶¶ 2, 4.) Plaintiffs contend that the Google technology installed

7  on the MasterClass website transmits "the specific video title and unique user data sufficient for

8  Google Analytics to identify the subscriber." (*Id.* ¶ 4.)

9  As to their "specific video title" contention, Plaintiffs allege no actual facts supporting that

10  any Google technology installed on the MasterClass website discloses the video content that

11  MasterClass subscribers request or access. Nor could they. Like its use of the Meta Pixel, the

12  MasterClass website is configured to ensure that individual users' video viewing information is *not*

13  disclosed to Google.

14  As to their "personally identifying" contention, Plaintiffs allege that the Google technology on

15  MasterClass's website sent Plaintiffs' "personal IP Address" and "other information," including

16  device information, to Google. (*Id.* ¶¶ 11, 18.) The SAC alleges that this "unique information"—i.e.,

17  the IP Address—is "sufficient for Google to identify the user." (*Id.* ¶¶ 52, 66.) Plaintiffs explain this

18  is possible because Google "is an email service and electronic communication service provider akin

19  to an ISP that stores IP addresses alongside other user information (name, email, phone number),"

20  such that its receipt of a Google user's IP address can be internally linked to a specific Google user's

21  Gmail account. (*Id.* ¶ 91.) Unlike the allegations regarding Facebook IDs, the SAC does not allege

22  that an "ordinary person" has any way of linking the information disclosed to Google to any specific

23  person.

24  **D.    Plaintiffs' Experiences**

25  Plaintiffs allege that they each "subscribed to [MasterClass's] website." (SAC ¶¶ 10, 17.)

26  Plaintiffs each allege that they thereafter "used [his or her] subscription . . . to request and obtain pre-

27  recorded videos." (*Id.* ¶¶ 11, 18.) Each time they did, Plaintiffs contend that the Google technology on

28  MasterClass's website "disclosed to Google the specific title of the video [he or she] requested and

4

1    obtained . . . coupled with information sufficient for Google to identify [him or her]." (*Id.*) But as

2    noted above, this bottom-line conclusion is made without any supporting factual allegations

3    whatsoever.

4            Plaintiffs allege they each had a Meta account during this same time period, along with a

5    Meta profile and a Facebook ID associated with that profile. (*Id.* ¶¶ 12, 19.) They each allege that the

6    Meta Pixel on the MasterClass website "disclosed . . . [his or her] FID and [his or her] purchase of a

7    subscription to [MasterClass's] website[] to Meta." (*Id.* ¶¶ 14, 21.) Plaintiffs do not allege that the

8    Meta Pixel transmitted any information about the videos they requested or watched to Meta. They

9    also do not allege any facts about the public content of their Meta Profiles, and more specifically,

10   whether they included Plaintiffs' names or other personal details.

11   **III.    LEGAL STANDARD**

12           To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

13   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

14   662, 678 (2009). The rule that a court accept as true allegations in a complaint is "inapplicable to

15   legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the

16   speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Warren v. Fox*

17   *Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citation omitted) ("We do not ...

18   necessarily assume the truth of legal conclusions merely because they are cast in the form of factual

19   allegations."). Nor should a court "accept as true conclusory allegations which are contradicted by

20   documents referred to in the complaint." *Id.* Dismissal is warranted where the "well-pleaded facts do

21   not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679

22   (quoting Fed. R. Civ. P. 8(a)(2)).

23   **IV.    ARGUMENT**

24           Neither of the SAC's two theories of VPPA liability – i.e., regarding the MasterClass

25   website's alleged use of the Meta Pixel and Google technology – plausibly show that the MasterClass

26   website transmitted statutory PII. To state an actionable VPPA claim, it is "plaintiff's burden [to

27   plead] . . . that the video-service provider actually knew that it was disclosing: 1) a user's identity; 2)

28   the identity of the video material; and 3) the connection between the two—*i.e.,* that the given user

DEFENDANT'S MOTION TO DISMISS; CASE NO. 3:24-cv-05264-JD

1   had 'requested or obtained' the given video material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090,

2   1097 (N.D. Cal. 2015). Neither of Plaintiffs' theories of liability satisfy these elements. The Google

3   disclosures fail because Plaintiffs do not allege that MasterClass disclosed information revealing their

4   personal identities. And the Facebook disclosures fail because (i) Plaintiffs do not allege that

5   MasterClass disclosed information regarding any video content they requested or obtained and (ii)

6   Plaintiffs do not plausibly allege that the disclosure of their Facebook IDs personally identified them.

7       **A.      Plaintiffs' Google Theory of Liability Is Foreclosed by *Eichenberger v. ESPN, Inc.***

8           Plaintiffs' theory of VPPA liability regarding the alleged Google disclosures is legally

9   frivolous. The VPPA only applies to disclosures of "information which identifies a person." 18

10  U.S.C. § 2710(a)(3). In *Eichenberger*, the Ninth Circuit held that the VPPA's definition of PII applies

11  both to information that "by itself, identifies an individual" and information that "*can be used* to

12  identify an individual." 876 F.3d at 984 (emphasis in original). Information is capable of identifying

13  an individual under VPPA when it "readily permit[s] *an ordinary person* to identify a [particular

14  individual as having watched certain videos]." *Id.* at 985 (alteration and emphasis in original)

15  (quoting *In re Nickelodeon*, 827 F.3d at 290). If the disclosed information is identifying only when

16  "combined with other data in [the recipient's] possession," it is *not* identifying under the VPPA. *Id.* at

17  985-986.

18          Plaintiffs' VPPA theory regarding MasterClass's alleged disclosures to Google fail under

19  *Eichenberger*. In *Eichenberger*, the Ninth Circuit held that the disclosure of the plaintiff's device

20  identifier (a Roku device serial number) to Adobe was *not* personally identifying under the VPPA

21  because the information could not "identify an individual unless it [was] combined with other data in

22  Adobe's possession." 876 F.3d at 986. That is the same theory of PII Plaintiffs allege here. Plaintiffs

23  do not contend that their personal IP addresses or any "other" information disclosed to Google is by

24  itself identifying or capable of identifying a person *unless* it is combined with the "other user

25  information (name, email, phone number)" that Google has. (SAC ¶ 91.) In fact, Plaintiffs themselves

26  contrast the information allegedly disclosed to Google with the information alleged disclosed to

27  Meta, only the latter of which Plaintiffs contend an "ordinary person" could use to identify them.

28  (*Compare id.* ¶ 62 *with id.* ¶ 66.) Accordingly, and as the Ninth Circuit has explained, because

6

1  Plaintiffs do not allege that "an ordinary person could not use the [allegedly disclosed information] . .

2  . to identify an individual," it is not statutory PII under VPPA. *Eichenberger*, 876 F.3d at 986.

3     Notably, the Third Circuit rejected this same factual theory of liability in *In re Nickelodeon*,

4  the holding of which the Ninth Circuit expressly adopted in *Eichenberger*, 876 F.3d at 985. In that

5  case, the plaintiffs alleged that the defendant disclosed users' IP addresses to Google (among other

6  information, like browser and system settings), which "allegedly permit[ted] Google to track the

7  same computer [user]" using the informational resources at its disposal. *In re Nickelodeon Consumer*

8  *Priv. Litig.*, 827 F.3d 262, 282 (3d Cir. 2016). But as the Third Circuit explained, those allegations

9  did not amount to PII under the VPPA because "[t]o an average person, an IP address . . . would

10 likely be of little help in trying to identify an actual person," *id.* at 283, even though Google might be

11 capable of "assembl[ing] otherwise anonymous pieces of data to unmask the identity of

12 individual[s]." *Id.* at 290; *see also Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon*, 827

13 F.3d at 290) ("[T]he Third Circuit held that a unique IP address did not qualify as 'personally

14 identifiable information,' because the term includes only information that 'readily permits *an*

15 *ordinary person* to identify a particular individual as having watched certain videos.'") (cleaned up)

16 (emphasis in original).

17    Plaintiffs allege nothing to distinguish their Google disclosure theory from the theories

18 rejected in *Eichenberger* and *In re Nickelodeon*. It fails as a result.[3]

19    **B.    Plaintiffs' Facebook Theory of Liability Does Not Allege the Disclosure of**
20         **Statutory PII.**

21    Plaintiffs' theory of VPPA liability regarding the alleged Meta disclosures fails twice over.

22 The SAC does not allege that the MasterClass website disclosed any "specific video materials or

23 services" that Plaintiffs requested or obtained. And while the SAC alleges that the website disclosed

24

25

---

26 [3]    The Google disclosure theory also fails because Plaintiffs do not – and cannot – allege any
facts supporting their conclusory allegation that MasterClass's website disclosed information about
27 the specific video materials any subscriber requested or obtained. *Warren*, 328 F.3d at 1139. As noted
above, MasterClass's website *does not* disclose such information.
28

DEFENDANT'S MOTION TO DISMISS; CASE NO. 3:24-cv-05264-JD

1  Plaintiffs' Facebook IDs when Plaintiffs interacted with MasterClass's subscription webpage, they do

2  not plausibly allege that those disclosures were personally identifying.

3        1.    **The alleged Meta disclosures do not identify any "specific video materials**
             **or services" requested or obtained by Plaintiffs.**

4

5  The VPPA only applies to disclosures that reveal the "*specific* video materials or services" an

6  individual requested or obtained. 18 U.S.C. § 2710(a)(3) (emphasis added). "Specific" means

7  "definite; explicit; of an exact or particular nature." *Specific,* Black's Law Dictionary (6th ed. 1990).

8  As used in the VPPA, the word modifies both "materials" and "services." *United States v. Shultz*, No.

9  16-10107-01-EFM, 2018 WL 534333, at *4 (D. Kan. Jan. 24, 2018). Thus, to qualify as PII, the

10 information at issue must, by itself, "identif[y] an individual as *having watched certain videos*."

11 *Eichenberger*, 876 F.3d at 984 (emphasis added); *accord In re Nickelodeon,* 827 F.3d at 285-86

12 ("[S]pecific video materials or services" means "particular videos . . . watched"). This

13 straightforward interpretation of the statute makes perfect sense, given that the VPPA "creates a

14 private right of action for plaintiffs to sue persons who disclose information about their *video-*

15 *watching habits.*" *In re Nickelodeon*, 827 F.3d at 278 (emphasis added). It is also consistent with the

16 Act's purpose "[t]o preserve personal privacy with respect to the rental, purchase or delivery of *video*

17 *tapes or similar audio visual material.*" *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d

18 482, 485 (1st Cir. 2016) (quoting S. Rep. No. 100-599, at 1 (1988) (emphasis added)).

19 Unsurprisingly, every decision examining this aspect of the statute has agreed that the phrase

20 "specific video materials or services" refers to information that would enable a third party to ascertain

21 the *videos* a person "requested or obtained." *See*, *e.g.*, *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277,

22 284 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023)

23 (dismissing VPPA complaint because, among other things, the complaint failed to allege the

24 disclosure of the specific video materials requested or obtained by the plaintiff). Information that a

25 plaintiff is merely a customer of a "video tape service provider" is not PII under VPPA because it

26 does not identify any specific videos that person requested or obtained. *See Fed. Trade Comm'n v.*

27 *Amazon.com, Inc.*, No. C14-1038-JCC, 2015 WL 11256312, at *3 (W.D. Wash. Aug. 3, 2015)

28 (holding that a subpoena requesting information identifying specific Amazon users did not implicate

the VPPA because it did not seek the "*specific* video materials or services" that those users requested or obtained) (quoting 18 U.S.C. §2710(a)(3)) (emphasis in original). Similarly, information that an individual *possibly* watched one of several videos offered by a video service provider is not enough to constitute disclosure of PII either. *Gonzalez v. Cent. Elec. Coop., Inc.*, No. 08–6236–HO, 2009 WL 3415235, at *9-11 (D. Or. Oct. 15, 2009) (holding that evidence indicating a plaintiff purchased one of 15 movies, but not identifying which specific movie was purchased, did not constitute PII for purposes of the VPPA); *see also Martin*, 657 F. Supp. 3d at 285 (transmission of a webpage URL was not a disclosure of "specific video materials or services," where no information showed whether an individual watched a specific video on that webpage or interacted with non-video content).

Here, Plaintiffs only allege that the Meta Pixel discloses "the fact that the subscriber requested or obtained a [MasterClass] subscription." (SAC ¶ 3.) But they do not allege that the Meta Pixel disclosed any information revealing or even implicating any video content they requested or viewed. Accordingly, because Plaintiffs do not allege that MasterClass disclosed information about any "specific video materials or services" they engaged with, the SAC does not and cannot allege any disclosure of PII to Meta.

### 2.    The alleged Meta disclosures are not personally identifying.

The SAC does not plausibly allege that the disclosure of either Plaintiff's Facebook ID plausibly identified them. While several courts have held that Facebook IDs *may* constitute PII because "an ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID," *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (citing *Eichenberger*, 876 F.3d at 986), those claims must still allege that the profile in question contains enough "personal information . . . that could be used to readily identify them," *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023)). Absent such allegations, there is no plausible reason to conclude that disclosure of a Facebook ID is personally identifying under *Eichenberger*'s "ordinary person" test. *Ghanaat*, 689 F. Supp. 3d at 720 *see also Heerde*, 2024 WL 3573874, at *3 (same).

1    Here, Plaintiffs each allege they have Meta Profiles and Facebook IDs associated with them,

2  but include no allegations about the contents of those profiles. Thus, while Meta presumably could

3  personally identify Plaintiffs using internal information at its disposal (using, for example, Plaintiffs'

4  Facebook registration details), the SAC alleges no facts supporting their conclusion that an *ordinary*

5  *person* could do so. As a result, the SAC does not plausibly allege that MasterClass's alleged

6  transmissions to Meta resulted in the disclosure of any personally identifying information.

7  **V.    CONCLUSION**

8    The basic facts underlying the SAC do not and cannot give rise to VPPA liability. The SAC

9  should be dismissed with prejudice.

10

11  Dated: November 14, 2024            **ZWILLGEN LAW LLP**

12                        By:  */s/ Sheri Pan*

13                           Sheri Pan
                           sheri@zwillgen.com

14
                        **Attorney for Defendant**
15                        Yanka Industries, Inc. d/b/a MasterClass

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS; CASE NO. 3:24-cv-05264-JD